**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:

| | |
|---|---|
| FRANK and DAWN HACKLER, | Chapter 13 |
| | Case No. 16-33817 (CMG) |
| Debtors. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| FRANK and DAWN HACKLER, | Adv. Pro. No. 16-01881 (CMG) |
| Plaintiffs, | |
| v. | |
| ARIANNA HOLDINGS COMPANY, LLC, | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

**WASSERMAN, JURISTA & STOLZ**
**Leonard Walczyk, Esq.**
Attorney for Plaintiffs

**GOLDENBERG, MACKLER, SAYEGH & MINTZ**
**Keith A. Bonchi, Esq.**
Attorneys for Defendant

**CHRISTINE M. GRAVELLE, U.S.B.J.**

### Introduction

In this motion the Court is tasked with determining whether a transfer of real property through a tax sale foreclosure constitutes a fraudulent conveyance or preference where the amount of the underlying tax sale certificate being foreclosed upon is significantly lower than the value of the property. The Court finds that the transfer herein may be avoided as a preference. As a result, the Court need not decide whether it can also be avoided as a fraudulent conveyance.

### Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (F), and (H). Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and 1409. Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following findings of fact and conclusions of law.

### Facts

Debtors, Frank J. Hackler and Dawn Stelze-Hackler ("Debtors"), listed real property located at 339 West Lawrence Street, North Brunswick, NJ (the "Property") as being owned jointly by them as tenants by the entireties. On June 25, 2013 the Township of North Brunswick held a tax sale for unpaid municipal liens on the Property (the "Tax Sale"). The Tax Sale was advertised for the four weeks leading up to the event. Phoenix Funding, Inc. ("Phoenix") was the successful bidder, having bid the interest rate on the tax sale certificate down to 0% and having paid a premium of $13,500 for the right to purchase the certificate. Phoenix continued to pay delinquent taxes as they became due, charging an interest rate of 18% as allowed by state statute.

More than two years after the Tax Sale Phoenix sent a notice of intent to foreclose upon Grete Hackler as the last record owner of the Property.  Phoenix filed a tax sale foreclosure complaint against Ms. Hackler, which complaint was subsequently amended to include Debtor, Frank J. Hackler (the "Foreclosure").[1]  On May 9, 2016, Phoenix assigned the tax sale certificate to defendant, Arianna Holding Company, LLC ("Arianna").  Final judgment in the Foreclosure was entered on October 6, 2016, vesting title to the Property in Arianna.

Debtors filed a Chapter 13 bankruptcy on December 14, 2016.  The petition and schedules valued the Property at $335,000, listing the value of Arianna's lien at approximately $45,000.  Debtors submit there are approximately $89,000 of additional judgment liens against the Property.  Debtor's Chapter 13 plan proposes to pay Arianna's claim, and all other creditor claims, in full.  The same day as the bankruptcy filing, Debtor filed the present adversary proceeding, seeking to avoid the October 6, 2016 transfer of the Property to Arianna.  Almost immediately, this motion for summary judgment was filed.  Arianna objected and filed a Cross-Motion for Summary Judgment.  The Court heard oral argument on January 31, 2017.  The parties filed supplemental briefs in June 2017.

## Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a) (made applicable to adversary proceedings pursuant to F.R.B.P. 7056).  As the Supreme Court has indicated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole,

---

[1] According to the Certification of Benedict Caiola, submitted in support of the Cross-Motion for Summary Judgment, Phoenix amended the foreclosure complaint after learning that Grete Hackler had died, leaving the property to her son Frank.  Frank J. Hackler, in his capacity as executor of the estate of Grete, deeded the Property to Dawn A. Stelzle-Hackler for the sum of $1.00.  Debtors' Schedule A is not consistent with Mr. Caiola's certification.  The inconsistency need not be resolved because the facts are not relevant to this decision.

which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (internal quotation and citation omitted). At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." Knauss v. Dwek, 289 F.Supp. 2d 546, 549 (D.N.J. 2003)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). In doing so, the court must construe facts and inferences in a light most favorable to the non-moving party. See Am. Marine Rail NJ, LLC v. City of Bayonne, 289 F. Supp. 2d 569, 578 (D.N.J. 2003)(citing Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 578088, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

"The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact . . . ." Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex Corp., 477 U.S. at 323). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995)(citations omitted). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## **Legal Analysis**

While the briefing of these parties and the opinions of many of the previous courts in this district who have examined this issue have focused on 11 U.S.C. § 548, we begin and end our analysis with 11 U.S.C. § 547(b). That section allows a debtor or trustee to set aside a transfer to a creditor as preferential if the transfer was:

      (1) to or for the benefit of a creditor;
      (2) for or on account of an antecedent debt owned by the debtor before such transfer was made;
      (3) made while the debtor was insolvent;
      (4) made on or within 90 days before the date of the filing of the petition…; and
      (5) that enables such creditor to receive more than the creditor would receive if –
          (A) the case were a case under Chapter 7 of this title;
          (B) the transfer had not been made; and
          (C) such creditor received payments of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

      Aside from blanket denials in its answer to the complaint, Arianna has not specifically contested any element of § 547(b) in its response to Debtors' Motion for Summary Judgment. Arianna argues that a preference under § 547 raises the same federalism concerns as with a fraudulent conveyance as articulated by the United States Supreme Court in the case of BFP v. Resolution Trust Corp., which held that mortgage foreclosure sales are not fraudulent conveyances under § 548. *See* BFP v. Resolution Trust Corp., 511 U.S. 531 (1994).

      The BFP Court examined the requirement under § 548 that to set aside a transfer as fraudulent a debtor must have "received less than a reasonably equivalent value in exchange for such transfer." *See* 11 U.S.C. § 548(a)(1)(B)(i). The case hinged upon whether "reasonably equivalent value" was defined as "market value", or whether the phrase could be satisfied by consideration received at a noncollusive, regularly conducted real estate foreclosure sale. Id. at 536.

      The Supreme Court noted that "[t]he language of § 548(a)(2)(A) ('received less than a reasonably equivalent value in exchange') requires judicial inquiry into whether the foreclosed property was sold for a price that approximated its worth at the time of sale." BFP, 511 U.S. at

538-39.  In noting that the meaning of the language was not clear, the Court cautioned that, in interpreting the phrase "reasonably equivalent value":

> Federal statutes impinging upon important state interests 'cannot . . . be construed without regard to the implications of our dual system of government . . .[W]hen the Federal Government takes over . . . local radiations in the vast network of our national economic enterprise and thereby radically readjusts the balance of state and national authority, those charged with the duty of legislating [must be] reasonably explicit.

Id. at 544 (citations omitted).  The BFP Court detailed the long history of fraudulent transfers and foreclosure in Anglo-American jurisprudence, noting that the area is traditionally regulated by the state.  Id. at 541-42.  The Court found that sanctity of titles to real estate and the power to ensure security in those titles is an essential state interest.  *See* id. at 544 (citations and internal quotations omitted).  Defining "reasonably equivalent value" under § 548 to mean the same thing as "market value" would have a profound effect upon the essential state interest, as it would place the title of every piece of real estate purchased at a foreclosure under a federally created cloud, despite otherwise complying with state law.  Id.

The BFP Court ultimately held that to displace an area of traditional state regulation the federal statutory purpose must be "clear and manifest," otherwise the Bankruptcy Code "will be construed to adopt, rather than displace, pre-existing state law."  Id. at 544-45 (citations and internal quotation marks omitted).  Being unable to find such intent or legislative purpose, the Court held that "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with."  Id. at 545.

The BFP Court specifically limited its opinion to mortgage foreclosures of real estate. *See* BFP, 511 U.S. at 537, n. 3. The Court recognized that "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." Id.

Courts are split as to whether the reasoning of BFP nonetheless extends to tax sales under § 548.[2] We find the holding of BFP to be irrelevant to the analysis of a transfer under § 547. BFP interprets a phrase "reasonably equivalent value," which does not appear anywhere in § 547.

---

[2] *Compare* In re Tracht Gut, LLC, 836 F.3d 1146 (9th Cir. 2016) (California tax sales have same procedural safeguards as BFP mortgage foreclosure sale); In re Grandote Country Club Co., 252 F.3d 1146, 1152 (10th Cir. 2001) (decisive factor in determining "reasonably equivalent value" in the context of tax sale transfer is state procedures for tax sale, in particular, statutes requiring public sales under a competitive bidding procedure); In re T.F. Stone Co., 72 F.3d 466, 472 (5th Cir. 1995) (tax sale for $325 on property valued at over $65,000 was conducted in conformity with Oklahoma law and was for "present fair equivalent value"); In re 2345 Plainfield Ave., Inc., 72 F.Supp.2d 482 (D.N.J. 1999), *aff'd*, 213 F.3d 629 (3rd Cir. 2000) (when New Jersey Tax Sale Law has been complied with, the price received at the tax sale is reasonably equivalent value); In re Crespo, 557 B.R. 353 (Bankr. E.D. Pa. 2016), *aff'd* 2017 WL 1177186 (E.D. Pa. March 30, 2017) (same under Pennsylvania law); In re Jacobson, 523 B.R. 13 (Bankr. D. Conn. 2014) (same under Connecticut law); In re Fisher, 355 B.R. 20 (Bankr. W.D. Mich. 2006) (no distinction between BFP analysis in foreclosure sale or forced tax sale); In re Washington, 232 B.R. 340 (Bankr. E.D. Va. 1999) (tax sale conducted under Virginia law conclusively presumed to constitute reasonably equivalent value); In re Samaniego, 224 B.R. 154 (Bankr. E.D. Wa. 1998) (same under Washington law); In re Turner, 225 B.R. 595 (Bankr. D.S.C. 1997) (adopting and applying BFP holding to tax sales); In re Russell-Polk, 200 B.R. 218 (Bankr. E.D. Mo. 1996) (tax sale conducted under Missouri law satisfies requirement that transfer be in exchange for reasonably equivalent value); In re Golden, 190 B.R. 52 (Bankr. W.D. Pa. 1995) (same under Pennsylvania law); In re Hollar, 184 B.R. 243 (Bankr. M.D.N.C. 1995) (same in the context of IRS tax sales); In re Lord, 179 B.R. 429 (Bankr. E.D. Pa. 1995) (same under Pennsylvania law); In re Comis, 181 B.R. 145 (Bankr. N.D.N.Y. 1994) (same under New York law); In re McGrath, 170 B.R. 78 (Bankr. D.N.J. 1994) (same under New Jersey law); *with* In re Smith, 811 F.3d 228 (7th Cir. 2016), *cert. denied* 137 S.Ct. 103 (2016) (Illinois tax sale procedures do not involve competitive bidding and the bid amount bears no relationship to the value of the real estate; therefore, the procedures cannot establish that a sale is for reasonably equivalent value); In re GGI Properties, LLC, 2017 WL 2473278 (Bankr. D.N.J. June 7, 2017) (prepetition tax foreclosure sale conducted in accordance with New Jersey law did not establish "reasonably equivalent value" for debtor's property so as to prevent avoidance of tax sale as constructively fraudulent transfer, nor did it establish property's value and what taxing authority, as secured creditor, would have received in hypothetical Chapter 7 liquidation, so as to prevent debtor from avoiding sale as preference); In re Berley Associates, Ltd., 492 B.R. 433 (Bankr. D.N.J. 2013) (distinguishing between procedures for mortgage and tax foreclosures in New Jersey; absence of competitive bidding a bar to finding reasonably equivalent value); In re Varquez, 502 B.R. 186 (Bankr. D.N.J. 2013) (applying Berley); City of Milwaukee v. Gillespie, 487 B.R. 916, 920 (E.D. Wis. 2013) (BFP should not apply to non-sale foreclosure proceedings without a public sale offering); In re Murphy, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005) (New York procedure for tax forfeiture does not provide for public sale with competitive bidding).

We must begin any interpretation of a provision of the Bankruptcy Code by looking to the language of the statute in question. The Third Circuit has labeled this as the "cardinal canon of statutory interpretation." *See* In re Philadelphia Newspapers, LLC, 599 F.3d 298, 304 (3d Cir. 2010). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete." Id. (citing Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146 (1992)). Where the statutory language is unambiguous, the court should not consider statutory purpose or legislative history. Id. (citing AT&T, Inc. v. F.C.C., 582 F.3d 490, 498 (3d Cir. 2009)).

Arianna has not directed us to any element of § 547 it feels is ambiguous, unclear, or left unsatisfied in this case. However, in support of its position that the tax sale cannot be avoided as a preference, it cites to caselaw which extends the holding of BFP to § 547 preferential transfers. *See, e.g.,* In re Pulcini, 261 B.R. 836 (Bankr. W.D. Pa. 2001)(finding no "clear and manifest" intention of Congress in § 547 to override long-standing Pennsylvania law concerning title to real property); In re FISBA Forwarding, Inc., 230 B.R. 334, 341 (Bankr. S.D. Tx. 1999)("to hold this foreclosure to be a preferential transfer would create the same problems with state real property title records that would have been created by classifying the transaction as a fraudulent transfer"); *but see, e.g.,* In re Whittle Dev., Inc., 463 B.R. 796 (Bankr. N.D. Tx. 2011)(plain, unambiguous language of § 547 distinguishable from BFP holding regarding § 548); In re Andrews, 262 B.R. 299 (Bankr. M.D. Pa. 2001)(preventing windfall to creditor at the expense of others consistent with the plain language of § 547). Arianna cites to these cases to the extent that they address the federalism issues articulated in BFP, specifically the concerns regarding the stability of title to real property. However, without first identifying any ambiguity in the

language of § 547 Arianna has reversed the order of the analysis. In BFP, the Supreme Court could not reach their holding regarding the meaning of "reasonably equivalent value" without first acknowledging that the "highly generalized reformulation of the 'plain meaning' of 'reasonably equivalent value' continues to leave unanswered the one question central to this case, wherein the ambiguity lies: What is a foreclosed property worth?" BFP, 511 U.S. at 546-47. Only after recognizing that an ambiguity existed could the Court then examine the effect of that ambiguous language on the state interest implicated by these sales. Here, Arianna instead asks this Court to engage in "results-based" analysis by ruling based on the effect of a statute, without regard for the plain meaning of the language of the statute, or any contention that the language has not been satisfied.

Though not referenced by Arianna, a deeper reading of In re Pulcini reveals that the court in that case did interpret the language of § 547 to reach its conclusion. *See* In re Pulcini, 261 B.R. at 843-45. In re Pulcini and its progeny found that mortgage foreclosure sales did not constitute a transfer of an interest in property allowing the creditor to receive more than in a Chapter 7, as required by § 547(b)(5). In re Pulcini, 261 B.R. at 844. The ambiguity under § 547(b)(5) arises due to the uncertainty in determining a hypothetical liquidation value in light of the numerous assumptions, judgments calls, and speculation that goes into the valuation process. In re Veltre, 2017 WL 3481077 at *7 (W.D. Pa. Aug 14, 2017). The In re Veltre court noted that in Pennsylvania, "it is presumed that the price received at a duly advertised public sale is the highest and best obtainable" and therefore "a trustee would not be able to secure a higher price through a Chapter 7 liquidation." Id. at *8.

These cases are distinguishable in that they each deal with a mortgage foreclosure sale as opposed to a tax foreclosure sale. In the present matter it is not in controversy that the valuation

of the Property, estimated at $335,000, far exceeds the value of Arianna's lien, estimated at $45,000. There are no mortgage liens on the Property, although Debtors have unsecured debt. It cannot be reasonably argued that a Chapter 7 trustee would not be able to secure a higher price for the Property than the amount of the Arianna lien. Liquidation in this case would pay the Arianna lien in full and produce significant assets for distribution to creditors. It cannot be reasonably argued that Arianna, in receiving a $335,000 property, has not received more than the approximately $45,000 it would have received in a Chapter 7 bankruptcy. There is simply no portion of § 547(b) which cannot be satisfied under the facts of this case. Because we read the unambiguous, plain language of § 547 as written, our inquiry is complete, and summary judgment is granted in favor of the Debtors and against Arianna.

To the extent that § 547(b) may be seen as ambiguous, we find that Arianna's arguments regarding federalism are overstated when applied to a § 547 preferential transfer. New Jersey has expressly exempted tax foreclosures from the reach of its fraudulent transfer statute. *See* N.J.S.A. 54:5-87 (final judgment of tax foreclosure shall not be deemed sale, transfer or conveyance of title or interest under the provisions of the Uniform Fraudulent Transfer Act). But, that statute says nothing about the effect of the preferential transfer provisions set forth in the Code. As to preferences, the state law is not explicit.

Allowing avoidance of a transfer of property made pursuant to the entry of judgment on a tax sale foreclosure is not inconsistent with state law. The definition of a preferential transfer requirement, as applied to the case before this Court, includes the requirement that the transfer be made during the 90 days prior to the filing of a petition. The same state statute that provides that a final judgment of tax foreclosure is not a fraudulent conveyance, also contemplates a three month period within which entry of the tax sale foreclosure judgment may be challenged. *See*

N.J.S.A. 54:5-87 (no application shall be entertained to reopen judgment after three months from date thereof). Application of preference law does not extend the time in which a tax sale judgment can be challenged any longer than that already contemplated by state law. There is no creation of an additional cloud on title so as to frustrate or conflict with statute. Avoidance of a transfer made pursuant to a tax sale does not generate the same federalism concerns raised by the BFP Court. The federalism argument made by Arianna as applied to preferences defined in § 547(b) is not persuasive.

## Conclusion

The tax sale foreclosure transfer of the Property from Debtors to Arianna satisfies all of the elements of the plain, unambiguous language § 547(b) and may thusly be avoided. Debtors' motion for summary judgment is GRANTED, and Arianna's cross-motion for summary judgment is DENIED.


Dated:  8/28/17                                    /s/Christine M. Gravelle
                                                   United States Bankruptcy Judge